United States v. Campbell Mr. Dodson. Good morning and may it please the court. My name is Jonathan Dodson and I'm representing Erickson Campbell. This case is about a traffic stop that was prolonged while an officer asked questions unrelated to the stop. Let's get this very important case, in my opinion at least. You seem to suggest that Rodriguez from the Supreme Court abrogates Griffin, which is an opinion of this court, correct? Yes, Your Honor. That's kind of a big deal. How is Rodriguez clearly contrary to Griffin? There's factual distinctions between the cases, right? There are factual distinctions. Well, if I can... Yes, there are factual distinctions. However, I would first suggest that... I mean, you want this panel to rewrite a decision of the court, right? Yes. Well, I want this panel to apply... You better have an idea how the Supreme Court decision in Rodriguez abrogates Griffin. It abrogates Griffin because Griffin... What difference does it make whether it does or not? I'm sorry? What difference does it make whether it does or not? We're bound by the Supreme Court. Correct. You're bound by the Supreme Court. Why do we have to reach out and overrule anything? You don't have to explicitly overrule Griffin. We don't need to at all, do we? No, Your Honor. We apply the law to the facts of this case. Correct. Okay. Correct. The district court found that the stop took 35 seconds, that it wasn't supported by a reasonable suspicion, and that Mr. Campbell was being detained when he was being questioned. But it found the overall process was reasonable. And that contravenes the Rodriguez opinion where the government made a similar argument. It argued that an officer can incrementally prolong a stop as long as the overall duration is reasonable and the officer was reasonably diligent. And the majority rejected that argument and said an officer, by completing a stop diligently, cannot earn bonus time. That if an officer can complete a stop diligently, then that's when the stop should end. And that there's no such thing as a de minimis Fourth Amendment violation. This clarified Arizona v. Johnson's holding, where the court held that if unrelated questions are permissible during a traffic stop, as long as they don't measurably prolong the duration of the stop. The Sixth Circuit in Everett, which this court quoted in Griffin, and a number of other circuits either explicitly or implicitly applied that to authorize de minimis prolongations of the stop. And the Sixth Circuit pointed out that one definition of measurable is significant. The Rodriguez court, the language of the Rodriguez opinion, suggests a more literal approach. Suggests if it adds time to the stop, then that's the end of the analysis. Of course, some slice of time still must be insignificant, but we know that it's less than the 35 seconds at issue in this case because Rodriguez overruled an Eighth Circuit case that involved 30 seconds, and that was the civil forfeiture case that I cited in my reply brief. And that was actually the case that established the Eighth Circuit's de minimis rule. There may be some question about, because the district court cited to the totality of the circumstances, and I would make a distinction where, in this case, there's a classic fishing expedition. There's a clear interval of time where the officer is pursuing an unfounded criminal investigation. And he acknowledges that, it seems to me, at the suppression hearing. He said, that's why I started asking him those questions. I know there's some areas in Augusta, you know, one time a big drug area. So that's why I asked him the questions. I mean, he acknowledges that his purpose exceeded the mission of the traffic stop, doesn't he? Correct. He did. He said that it was based partially on going to Augusta, and that touches on another point, which is that there were a couple of other detours that the district court didn't emphasize that we contend weren't necessary to the traffic stop, which is when he was discussing in detail a couple of different times exactly where it was that Mr. Campbell was going. And it would be relevant to know, in general, how far he had to drive to the traffic investigation, but to know that the specific neighborhood could have only been relevant to the criminal investigation. However, this court doesn't have to second-guess that if it agrees that the 35 seconds that the district court emphasized is significant. But the officer did admit that this was a clear, he was clearly trying to investigate criminal, to pursue a criminal investigation and not the traffic investigation. Are you suggesting he stopped the car for a criminal investigation? Well, there's some indication of that in the video. You're arguing a pretext now. Well, no, I'm arguing that he expanded it. Was it a pretextual stop or not? Well, I would contend it was, but that doesn't matter under the law. I recognize pretextual stops are lawful, but the first, at the very beginning of the video, the first thing he hears from dispatch is Erickson Meeko Campbell, active felon. A pretextual stop, he didn't have any basis for doing it. Correct. Yeah, that's your argument. Correct. My argument is that the turn signal was not, he didn't have objectively. That's not a good argument. I mean, he crossed the fog line. The officer had clear probable cause to stop the car. I mean, I think you're in much more solid ground if you want to say that the stop was unconstitutionally prolonged. I mean, the guy had a reason to stop, two reasons to stop the car, right? I agree that the better argument is the unconstitutional prolongation. As for crossing the line, I would just point out that the district court, during the motion to suppress hearing, said it wasn't particularly impressed with that, and that could be a credibility issue or it could just be that the district court doesn't care too much for those kinds of violations. But he was looking at the car, was looking at the video. And it actually declined to watch the part about crossing the line, and that's it. Let me, and to that end, I mean, I've watched the video like more than once, and Judge Royal says that, you know, first the officer turned on the video camera and then he observed the vehicle cross the fog line a second time. Well, that didn't happen. Correct. It's not visible from the video, and I think he tried to testify at the motion to suppress hearing that the video didn't capture that, but it's not visible on the video the second time. So, and the district court declined to rule on that issue. So given its statements that it wasn't particularly impressed with that violation and the fact that it didn't rule on it, if that ended up being— But why don't we just reverse on the issue of the nature of the stop and forget about having to apply all this Supreme Court law as to prolongation? It seems to me that's issue one, right? That's correct. The court wouldn't need to reach the prolongation issue if it found that there was no probable cause justifying the stop. If it does find that there's probable cause, then the prolongation issue is determinative of the appeal. In this case, counsel, you don't claim that the consent was involuntary. Not as an independent claim, no. The issues that the court addressed didn't include that, and in your brief you don't include it. Let's assume the consent was valid. Okay. It was voluntary. All right. Where does that leave you? Well, it was still the fruit of the poisonous tree, and—  That's correct. But it has been implied a number of times in a traffic stop context. What's your best case? Perkins is— That it's the fruit of a poisonous tree, a voluntary consent. I would say Perkins is the best case for that because that also involved an unlawful expansion of a traffic stop into an unfounded criminal investigation. There, the officer was done with the stop and continued to ask questions and call in dogs for a dog sniff and obtain consent during that interval of prolongation, and the court found that that was fruit of the poisonous tree. Yes, because they challenged the consent. There's no challenge to the consent here. There— I have not— Not a word—counsel, there's not a word in the briefs or anything else about consent, and neither is there in the district court's opinion findings, and you didn't file a Rule 59E motion or some equivalent motion, I'll put it that way, asking the court to reconsider. 59E doesn't apply. So consent is irrelevant, is out of the picture here. It's a voluntary consent. We have requested suppression all along, and although we didn't— I understand that, but you haven't said a word in the brief about the consent being the fruit of a poisonous tree or otherwise involuntary. The consent happened during the interval of prolongation, however, and the factual findings of the court and the video bear that out. It all was within the same 35 seconds. You have a case in which there was an illegal stop and a voluntary consent that was concededly voluntary, in which the court struck it down nonetheless. I don't know that I have one where it was concededly voluntary. Well, it's concededly because it's not contested. Right. Well, the fruit of the poisonous tree is a separate part of the analysis, and even if it's voluntary— You're contesting the introduction of the evidence. Correct. The fruit of the poisonous tree. It's an exclusionary rule. And you did raise fruit of the poisonous tree— In your motion. In your blue brief, page 23, didn't you? I mean, fruit— It's not one of the two issues that was raised in the brief. It wasn't raised as a separate claim, but it was— It was a separate issue. We've always raised it as the remedy that would be appropriate. We have a hard and fast rule in this circuit that's pretty punitive, really, that if you don't put it in the brief as an issue, we don't consider it. Well, I could not find any cases on that in dealing with the remedy as a separate claim. That always involved adding a new claim, a new grounds for relief, after the principal brief. We're not asking for any new grounds for relief. We're just asking that the Court remedy the constitutional violation by excluding the evidence as fruit of the poisonous tree. And I will reserve the rest of my time for rebuttal. Thank you. Ms. Feinberg. Good morning. May it please the Court. My name is Lindsay Feinberg, and I'm here today on behalf of the government. I'd like to begin by emphasizing what Judge Royal, I think, rightly noted at the end of his suppression order, which is that neither Rodriguez nor the Constitution requires police officers, and here I'm going to take liberty with this language, to become robots. When we look at what transpired at this traffic stop, nothing that Deputy McCannon did ran afoul of the Fourth Amendment, either in the initiation of the stop or in the length that took place prior to Mr. Campbell giving voluntary consent to search the vehicle. If we look at the reasons— Do you agree that consent's off the table here? Yes. Why? Consent's off the table in the government's estimation because two reasons. One, if we look back at what transpired in the district court, and I would point specifically to footnote 14 in the district court's order, where it's clear that the only issue, the only portion of consent the district court thought had ever been properly raised by Mr. Campbell was the scope of the consent, and the district court found that the scope of the consent here was sufficient to search the entire vehicle. So that's what the district court believed the only issue that had been properly raised in the first place by Mr. Campbell about consent was. And again, that's footnote 14 in the district court's order. And second, I would say that if we look at the initial brief on appeal, and Judge Martland rightly noted there is language in the appeal that says fruit of the poisonous tree or implies that. In the brief. In the brief, you're correct. Of course, Your Honor correctly noted that. Nevertheless, the substance of the argument, it's not plainly and prominently raising the issue of consent in the way in which would be more in accordance with this court's well-established case law. So now we've come to you've got to put it in a bold heading or you've waived it. I mean, is that your position? No, I don't think it necessarily needs to be in a bold heading, although, of course, it's preferable. I mean, when we're coming before this court, it's important that we know, as the responding party, as the appellee, what issues the appellant believes are germane. Well, I mean, the government's burden is to prove that the consent was valid, right? I mean, that's where you begin in the analysis, right? Yes, but taking one step back from consent, I would say, Judge Martin, that it's always the government's burden to prove that consent is valid under this court's well-established case law. But typically the moving party here, the party that filed the motion to suppress, would challenge consent in the first instance. And it's not clear that they did so in a way that the district court realized it was before them and that the United States realized that it was incumbent upon them to develop this analysis of the suppression hearing. Can I talk to you about the suppression hearing? So just back to the Rodriguez ruling of the United States Supreme Court. I mean, they talk about the mission of the stop. And here the officer said the reason why he stopped him was the blinker and crossing the fog line, right? Yes, ma'am. Okay. So that was the mission of the stop. Correct. And, you know, it's so interesting reading the transcript of the suppression hearing. By my count, there were 11 questions identified by Tina Hunt, you know, where she asked the officer, so you asked this question, did that have anything to do with the mission of the stop? No. So 11 questions. You know, Ms. Hunt, first one, where was he going? Where were you going that weekend to Mr. Campbell? She asked the officer, did that have anything to do with the stop? No. Second question, what area of Augusta? Nothing to do with the stop. The officer agrees. All right. Volunteer, the officer, I know a little bit about Augusta. Did that have anything to do with the stop? No. Four, did you have the weekend off as the officer to Mr. Campbell? Did that have anything to do with the stop? No. Five, you know, you asked him if he had firearms. That exceeds the mission of the stop. The officer agreed. You asked him the last time he had a ticket. Officer agrees. That has nothing to do with the stop. Seven, you know, again, it brings in the other deputy, commenting about the area where Mr. Campbell is going. Nothing to do with the stop. The officer agrees with that. Pirated DVDs. Officer agrees. That had nothing to do with the stop. Clothing, nothing to do with the stop. Asked him if he had illegal alcohol. Nothing to do with the stop. And, of course, she could have gone on, you know, the question about the dead bodies, all that stuff. I mean, nothing to do with the stop. So, you know, for me, this, you know, 30 seconds here, 20 seconds here, is not nearly as persuasive as what about all the time, you know, the officer spent talking about these things that he acknowledges had nothing to do with the mission of the stop. And why doesn't that violate the Supreme Court ruling in Rodriguez? Because, as the Supreme Court tells us in Rodriguez, and as this court has told us time and again, the touchstone of the Fourth Amendment is reasonableness. And I don't think anything that happened here was unreasonable. I mean, Your Honor, properly noted various questions that Deputy McCannon honestly and candidly said were not part of the purpose of the stop. However, they also had discussions about the weather. It was a cold night. Your Honor mentioned she watched the dash cam video more than once. You can see the puffs of air. Your Honor also would have noticed that Deputy McCannon suggested that Mr. Campbell might want to roll up the windows of his car before he got out so that he could keep the heat inside. He also asked him if he needed a coat. Again, this doesn't have anything to do with the nature of the stop. However, it's just a police officer in the course of diligently investigating traffic violations and expeditiously completing the mission of the stop, here writing the two warning citations, which, if I recall correctly, Judge Royal said took him a total of seven minutes and 43 seconds to write these two warning citations. And that was a reasonable period of time. So if the touchstone of the Fourth Amendment is – Had to talk to him to get the information to put in the document. Yes. And, you know, there was a suggestion at some point in the briefing that so much as an officer looking up and making eye contact with an individual when they're talking is violating the Fourth Amendment. And, frankly, the government thinks that's silly. Police officers are people as well. And what Deputy McCannon did here was properly effectuate his mission, and he also did so in a polite and courteous manner. And to say that that runs afoul of the Fourth Amendment is a far cry from what I think the Rodriguez court was doing in that case. Well, but, I mean, what Rodriguez says is, you know, the officer – I'm reading from the – If an officer can complete traffic-based inquiries expeditiously, then that is the amount of time reasonably required to complete the mission. And my question to you is, when he's asked, you know, 15 questions that have nothing to do with the mission, hasn't he exceeded the time reasonably required to complete the mission? Judge Royal found no, and the government agrees with that. We think that these additional – I mean, but how does that square with Rodriguez? Well, Rodriguez, I think the primary factual distinction that we would draw is, of course, it was a seven – the traffic citation, it was a warning citation in Rodriguez as well, that had been written and returned. Nevertheless, the officer didn't consider the individuals in Rodriguez to be free to leave, and he kept them there for an additional seven to eight minutes in order for another officer – To go back to stopwatch. Exactly, which the government says no bright-line rules, no promulgation. We don't need stopwatches. But that was the fight in Rodriguez, wasn't it? I mean, the dissent said we get out our stopwatch, and the majority said no, no, no. It has to do with what's required to complete the mission, right? Yes, Your Honor. So why isn't your stopwatch argument a losing argument under Rodriguez? Well, the government does not intend to say that stopwatches are what determine whether or not a constitutional violation has occurred. And as Your Honor rightly pointed out, there are extraneous questions that occur over the course of a traffic stop. Nevertheless, what happened here was that the officer was still writing the warning citations, whereas in Rodriguez – and I understand that the court in Rodriguez made clear it doesn't matter, you don't get bonus time if you write very quickly. And here, Deputy McCannon wrote for a total of, I believe, seven minutes and 43 seconds. So we're not requesting bonus time. We're simply saying that the seven minutes and 43 seconds that he took, as Judge Royal rightly found, was a diligent completion of the traffic stop mission. You know, the analyzing the two blinking, the left taillight that was blinking too quickly, the confirming that the taillights out front were still working, or excuse me, the headlamps and the signals in the front of the vehicle worked, and then dealing with the crossing of the center line, or excuse me, the fog line. He had over 70 miles to his destination as I gather from looking at the map. Yes, Your Honor. So I suggested some of the questions that were asked, how far are you going, et cetera, were relevant. The bulb or whatever the defect was in the light may go out. Yes, Your Honor. They would be – I would think they would be normal questions. They are normal questions, and there are categories of questions that courts have approved of. Some of them are normal questions like that, part of assessing the violation themselves. So knowing how far you had to drive and where you were going might be indicative that your light is about to completely fail, even if it's currently in only poor working order. Which it was. It was working. Yes, it was in working order. However, it was not in good working order. The officer was concerned. Maybe it was, like, working double time. I mean, you could see the blinker. Yes, you could. It was blinking faster than a turn signal usually would. When Mr. Campbell accessed it in the dash cam video, the officer said, do you hear that clicking? And I've had this happen in my vehicle as well. It starts to click too quickly before the light goes out. Or it may indicate, according to Deputy McCannon, that you have a turn signal that isn't working somewhere else. But that was not the case here. I mean, there was no turn signal that was not working. That is correct. Okay. Yes, that is correct. But I would hasten to add that Judge Royal found that it was appropriate, in addition to look at the signal that was blinking too quickly, to also check the front turn signals as well. Which he did. Can I turn you to the Fruit of the Poisonous Tree analysis? So, as I understand it, when you're looking at a search that comes after a Fourth Amendment violation, there's a two-prong inquiry. First is voluntary, not voluntary, the consent. So let's just assume voluntary and go to the second prong. And you're nodding your head, so I'm hoping I'm getting the framework right on this. There's three questions to ask when you get to the second prong of this inquiry. One, the time lapse between the seizure and the consent. The government doesn't say, I mean, you don't contest that one. It was the seizure and then the consent happened right together, right? Yes, Your Honor. Okay. And then for the second part of that test, intervening circumstances. The government does not contend that there were any intervening circumstances, do you? No, we do not. Okay, so the fight is about the purpose and flagrancy of the misconduct, right? The third prong. Okay, so with that in mind, this acknowledgment by the officer that he was asking, I mean, he says that's why I'm asking him questions because I want to find out about, I mean, I know about this drug area in Augusta. I mean, doesn't that exceed the mission of his stop? No, Your Honor. And the reason I would, let me answer this in a way. No, Your Honor, but because. No, it does not exceed the mission of his stop because he's still filling out the warning citation. Do the questions themselves exceed the purpose of the stop? Yes, Your Honor. However, because he is still completing the mission, as Judge Royal found, then he has not exceeded what he should be doing. But you've agreed with me that the purpose of the stop was for these two traffic violations, the crossing the fog line and the blinker, the fast blinker. Okay, that was the mission of the stop? That was. Okay, so I don't know how you square that with the officer acknowledging that he, that's why I ask him the questions. It did not pertain to the warning. You know, I know something about Augusta and this is, you know, there's this drug area in Augusta. I mean, that exceeds the scope of the stop, doesn't it? Not when the officer is still completing the broad picture of the stop, no, Your Honor. And in that case, if I may. What's your best case for that? Well, I would direct the court all the way back to Chenette Cloth, the sort of seminal Supreme Court case that talks about voluntariness and then talks about consent searches more generally. And in there, the Supreme Court rightly points out the issue with placing sort of artificial restrictions on consent searches. And also that points out that consent searches normally occur in people's offices or on highways and they're informal and unstructured occurrences, as opposed to what the court might think of as sort of a more formal, let's say, interrogation in a police station. And as a result, we go back to the touchstone of the Fourth Amendment being reasonableness, and we go back to the notion that if an officer asks a question, even if it's not one of the two reasons that he initially pulled you over, that does not necessarily mean that that officer has run afoul of the Fourth Amendment. While the question here about the contraband and the dead bodies, Judge Royal did find it troubling, this court has taken great pains, and other courts have as well, to not adopt a sort of bright line, no promulgation rule, and that's what Mr. Campbell is urging this court to do for all intents and purposes. Can I ask you, just to confirm with you, I know you've watched the video. Judge Royal finds that Mr. Campbell crosses the fog line during the time of the video. I didn't see that. Did you? I did not see it either, Your Honor. Nevertheless, I would point out that there's nothing that indicates that Judge Royal did not find his testimony to be incredible or to defy belief. And Deputy McCannon testified at the suppression hearing that it happened twice. Yeah, no, no, I just, it's not, I mean, there was no testimony from the officer that Mr. Campbell crossed the fog line after he turned on the video camera, right? I mean, so what Judge Royal's finding was inconsistent with the testimony of the officer. Isn't that right? I mean, we all make mistakes, but I just wanted to confirm that that's . . . I see my time's expired, so may I? Yes, please. Yes. Okay. Thank you. Thank you. I want to first address the bright line, no prolongation rule, and I would make a distinction where here you have this clear 35-second interval that bracketed by the district court's findings. In a case, maybe if we were just discussing the officer's diligence and there wasn't a phishing expedition and the officer was just taking too long in those cases, the totality of the circumstances would be more significant. But when there's this clear interval of time that is not related to the traffic stop, no other circumstance can negate that, can give him that time back. So in that sense, I think Rodriguez does draw a pretty bright line if it adds time to the stop. Is there anything in the record that would tell us that he took too long to fill out the ticket? I'm sorry? Is there anything in the record that would help us understand whether he took too long to fill out the warning? The video is the best evidence. No, no. The video tells us how long he took. Because what I'm saying, there's no expert. I'll put it this way. There's no expert who said in this case, once you get him out of the car and back to the police car under those circumstances, it should take X minutes to fill out the warning. No. He testified that he was very experienced at writing these warnings. I understand that. The answer is there's no testimony. No, there's no testimony about that. Other than the amount of time. Right. But, again, we're contending the overall time is not the relevant inquiry. It's whether there was some interval of prolongation. It's fact-specific, looking at what the officer actually did and how he did it. So, I think it is in this case. You agree that where he was going and how long it was going to take him is relevant to the investigation. I agree. In general, where he was going was. Well, sure. The specifics. It's about 70 miles away to Augusta from this stop. Right. And he asked that question very early. I understand that. Okay. The light may go out at any time. Right. And he couldn't have taken the car into custody, I guess. No. No, he couldn't. I next wanted to address, just highlight that the consent was literally a fruit of this interval of prolongation. And I just wanted to make sure I distinguish between raising voluntariness as an independent claim and requesting. I didn't say voluntariness. I'm just talking about the consent period. Correct. It was not an issue that was raised in the brief. There were two issues in the brief and neither one. Right. No, it wasn't a separate point. Said anything about the consent. No, Your Honor. I didn't raise that as a separate point heading. I finally just wanted to point out that in response to the government's argument that the officer was writing the citation while he asked these detailed questions about the destination, the questions that went beyond what I am saying would be necessary for the traffic investigation. And he admitted in the motion to suppress hearing that he looked up and stopped writing when he asked these unrelated questions. So literally it did not happen while he was processing the traffic investigation. So the consent to search was a direct result of this prolonged interval. And the district court's reasoning was rejected by Rodriguez. So for that reason, I'm asking this court to reverse the denial of the motion to suppress. Thank you very much. Thank you. We go to the next case.